Statement of the Case.
MONROE, J.
On August 12, 1907, plaintiff (being a company under the name of which John F. McCoy appears to conduct his business) and defendant entered into a written contract reading, as follows:
“This agreement, this day made and entered into between John F. McCoy and the Concrete Construction & Contracting Company, both of the city of New Orleans, parties of the first part, and George K. Pratt, of the city of New Orleans, party of the second part, witnesseth: That, whereas, said Concrete Construction & Contracting Company has bid on certain repaving and surface drainage work, and is about to enter into contracts with the city of New Orleans as follows:
Subsurface drainage contract on Magazine street, from Canal to Julia, about................... $32,690 00
Repaving contract on Magazine street, from Canal to Julia, about 30,860 50
Subsurface drainage contract on Gravier street, from Canal to Delta, about...................... 25,620 80
Repaving contract on Gravier, from Camp to Delta, about........... 12,000 00
Subsurface drainage contract on Common street, from Magazine to Front, about................... 16,558 00
Repaving contract on Common street, from Magazine to Front, about ........................ 6,400 00
$124,130 30
“And, whereas, under authority of a resolution of the board of directors of the said Concrete Construction & Contracting' Company, adopted Majr 24, 1907, the said John F. McCoy, has entered into an agreement with the said George K. Pratt, whereby in consideration of the payment to him of one half of the profits which may be derived from said contracts, the said George K. Pratt will finance the said undertaking and advance such moneys as may be necessary for the carrying on of the same.
“Now, therefore, in consideration of the foregoing, the parties of the first and second parts,, severally, bind and obligate themselves as follows:
“Upon the execution of this agreement, the several contracts above referred to, as well as all certificates and payments in connection with the same, shall be transferred and assigned to-said George K. Pratt, or to his order, or to such bank as he may select and 'designate, as subrogee.
“Upon completion of each of the aforesaid six contracts, accounts shall be audited and the net profit or loss upon the same shall be definitely fixed and determined by the parties to this agreement, reimbursement being firsi made of all amounts advanced, and, in so doing, the same shall be taken from the proceeds derived from the property owner’s portion of certificates when issued and collected, and the balance, if any, out of the city’s portion of said certificates, when sold, as hereinafter provided, and written acknowledgment shall be given by and to both parties to this agreement as to the existing conditions after auditing. All certificates and the cash derived from the sale or collection of the same shall remain in the control of the said George K. Pratt until after the completion' and auditing of all said contracts, to be used' by him exclusively in making payments or in securing funds for the carrying on of said contracts and the work upon the same, or as collateral in connection with the bond required by the city of New Orleans.
“The said George K. Pratt shall have the right, in his discretion, to pledge any and all certificates for advances necessary to carry out this agreement, and he shall further have the right to sell a sufficient amount of certificates, representing the city’s portion of payments under said contracts, provided that sufficient funds are not' derived from the collection of the property holders certificates for advances made by him; provided, further, that in selling the city’s portion of said certificates, both parties to this contract do agree as to the price, or, in the event of disagreement, then, he give written notice to the parties of the first part, designating the particular certificates of the city’s portion that he proposes to sell, the price of the same, and the purpose of said sale, and that said parties of the first part, after such notification, do fail within sixty days to procure and produce a bona fide purchaser for said city’s portion of said certificates at a higher price.
“All material accounts and labor rolls and other ‘necessary incidentals’ shall be charged to, and as, expenses.
“In consideration of the time and efforts of the said John F. McCoy, as general manager, being given to the carrying' on of the aforesaid contracts and their rapid completion, the salaries of the officers of the Concrete Construction *1049 .& Contracting Company, and bookkeeper and office expenses, as may be designated by the ■said John F. McCoy, shall be advanced to him monthly for account of said company by the party of the second part during the running ■of the said contracts, and until the final completion of the same; provided, however, that the total amount so advanced shall be no more or less than the sum of five hundred dollars per month, and that it shall be reimbursed to said party of the second part, and may be taken by him out of the profit of the parties of the first part, and may be adjusted in the regular auditing following the completion of each contract; and, provided further, that said advances shall in no event be made for a longer perio4 than twelve months.
“The said parties of the first part shall furnish the said George K. Pratt their notes for advances, and for pay rolls, materials and incidental accounts and salaries, etc., monthly, which he may discount or use as he may deem proper, returning the same when, after auditing, it shall appear that sufficient moneys have been realized from the proceeds of said contracts to meet and pay all expense accounts and indebtedness of said Concrete 'Construction & Contracting Company.
“In the event of legal services being required in connection with any of the contracts aforesaid, the party of the second part shall have the right of naming and employing the attorney-at-law who shall be engaged for such purpose.
“The party of the second part shall also have the right to appoint one man to act as timekeeper, paymaster and material clerk, at a salary of seventy dollars per month, whose duties shall be the paying of the men employed, receiving of material and the keeping of the men’s time. He shall have no authority to hire or discharge and shall be under the supervision of the manager, John F. McCoy, by whom all bills and pay rolls must be approved before payment. The salary of said appointee shall not be paid from the five hundred dollars per month stipulated for above as salaries and office expenses, but shall be charged to the expense account, and said John F. McCoy, shall have the right to discharge said employé if unsatisfactory, and shall, in such case, notify the party of the second part to replace with another appointee.
“Itemized reports of materials received, material used and cost of labor and all other expenses will be furnished the party of the second part daily, duly signed by manager and timekeeper.
“After all contracts have been completed and all expenses paid, the net profit derived from said contracts shall be determined and divided as follows: All claims due and all unused material and tools and implements purchased in connection with said contracts shall be fairly appraised; .all certificates still unsold and uncollected shall be duly classified and the amount of the cash balance on hand from the sale or collection of certificates shall be exactly ascertained. One-half of said appraisement and certificates and cash shall be given and belong to said party of the second part under the terms of this agreement, and the remaining half of said appraisement and certificates and cash shall belong to _ the parties of the first part, subject to reduction for reimbursement to the party of the second part of such amount as may be due him for advances for salaries and office expenses at the rate of five hundred dollars per month, as hereinabove set forth, and of such other sum or sums as the parties of the first part may have, by written acknowledgment, declared to be payable out of their share of the profits to the said party of the second part.
“In testimony whereof, the parties óf the first and second parts have hereto signed their names, at the city of New Orleans, this 12th day of August, 1907, in execution of the aforegoing agreement, the same being made in duplicate.
“Concrete Cons. & Cont. Company,
“William Demoruelle, -President.
“John F. McCoy, Sec. and Treas.
“John F. McCoy.
“George K. Pratt.
“Attest:
“John F. McCoy.
“Jas. McConnell, Jr.”
In May, 1908, the subsurface drainage contract on Magazine street having been completed, plaintiff received a certificate therefor from the city of New Orleans, for $32.-075.58, and transferred the same to defendant, from whose attorney, it thereafter received two communications, reading as follows:
“New Orleans, June 15, 1908.
‘^Concrete Construction and Contracting Co., and John F. McCoy, City — Dear Sirs: I am just in receipt of your letter dated June 12, 1908, replying to mine of June 10th. Your letter was delivered at my office this morning. In reply I beg to say that your long delay in answering, coupled with your failure to name a price, can only be taken as an indication of your unwillingness to agree as to the price, or an intention to disagree on any proposition made.
“If I am wrong in this conclusion, I must insist that you answer this letter immediately, stating your willingness and readiness to agree upon a price and naming the same. Failing in this, you are notified hereby, on behalf of Dr. George K. Pratt, that he is unable to agree with you as to the price, as provided in your contract of August 12, 1907, and, on his behalf I now give you written notice that, for the purpose of obtaining advances necessary to carry out his said agreement with you and to make payments required of him thereunder, and, further, for his personal reimbursement for amounts advanced by him, he proposes to sell the City’s subsurface drainage certificate, issued for $32,- *1051 075.58, and referred to particularly in your letter of June 12, 1908, to which this is an answer ; and you are further notified hereby that the price of the same, in the event of such sale, is fixed at eighty cents on the dollar. You are further requested to procure and produce a bona fide purchaser, within sixty days from this notification for said certificate at a higher price.
“And now, in addition to the above, you are further notified that the certificate above described, for any of the purposes above expressed, is proposed to be sold by Dr. George K. Pratt for any price 'between its par value and the said above mentioned figure of 80 c. on the dollar. In the event of your failure, within sixty days, to procure a bona fide purchaser at a higher price than Dr. Pratt may be able to obtain for said certificate, he proposes to sell the same at any price between the two figures mentioned, viz., 80 c. on the dollar and par.
“Yours truly, [Signed] Jas. McConnell, Jr.”
“New Orleáns, August 11, 1908.
“H. M. Ansley, Esq., Attorney for Concrete Construction & Contracting Co. and John F. McCoy — Dear Sir: Referring to the city certificate amounting to $32,075.58, made the subject of my letter of June 15, 19Ó8, addressed to the Concrete Construction & Contracting Co. and John F. McCoy, I, hereby, on behalf of my client, Dr. George K. Pratt, agree not to sell the said certificate until after August 25, 1908, without first obtaining the written consent of your clients.
“Yours truly, [Signed] Jas. McConnell, Jr.”
Two days after the date of -the letter last above quoted, to wit, on August 13, 1908, defendant brought suit against plaintiff (bearing the number 86,934 of the docket of the district court and being No. 17,914 of the docket of this court), in which a decree is this day handed down (52 South. 151),[1] remanding it to be further proceeded with, according to law and to the views expressed in the opinion, complaining that plaintiff had failed to transfer the city contracts and was refusing to transfer $45,000 of additional certificates which it had received, and praying for writs of sequestration and injunction and for a judgment for specific performance ; the present effect of the suit being that all the certificates called for by the city contracts (the contracts having been, at this time, executed), save the one mentioned, and certain certificates against property holders to the amount of $6,007.17 (also in the hands of the defendant), are now tied up by sequestration. In this suit (which bears the number 87,042 of the district court and ivas instituted on August 24, 1908) plaintiff seeks to enjoin defendant from selling the certificate referred to in the letters quoted, ¡and a preliminary injunction, restraining him from so doing, was issued. Shortly thereafter (on December 7, 1908), plaintiff instituted another suit (No. 88,050 of the docket of the district court), in which it seeks to annul the contract of .August 12, 1907, and to recover damages. On the trial (of this suit) it was testified -to by plaintiff’s president, and not denied, that defendant has advanced, under that contract, between $70,000 and $80,000, for which he has received, 80> far, only the certificate, for $32,075.58, the sale of which is here sought to be enjoined, and the certificates, amounting to $6,607.17, to which we have referred.
The same witness also testified that, though, as president of the plaintiff company, he had made the affidavit upon which the injunction was obtained (in effect, that defendant has no right, under the contract, to sell the certificate in question), he had, since, changed his mind, and was, when he testified, of opinion that defendant has that right. The testimony thus referred to was given upon the trial of a rule taken by defendant to dissolve the preliminary injunction, on the grounds: (1) “That the allegation that the said George K. Pratt has no right, under the contract of August 12, 1907, to sell said certificate,” is untrue; (2) that the affidavit for the injunction was improvidently made and is at variance with the testimony given by the affiant, in another case. The judge a quo made the rule absolute and dissolved the injunction, and, from his judgment to that effect, plaintiff prosecutes this suspensive appeal, thereby maintaining the injunction in force.
*1053 Opinion.
We find in the brief of defendant’s counsel what purports to be a copy of the opinion of the judge a quo; but, as we fail to find the opinion in the transcript, we presume that it was, inadvertently, omitted, or that the copy is unofficial. Whether official or unofficial, however, it appears to meet the requirements of the case, and we shall, therefore, avail ourselves of it. It reads as follows:
“There is no merit in that part of defendant’s motion 'based upon the withdrawal of the affidavit, for the president of a corporation has no more right to discontinue its suit, against the wishes of a directorate, by that process than by motion.
“Moreover, there is no question of fact involved, but simply one of construction of a contract, which is the province of the court and not of the witness.
“Prom the testimony of Mr. Demoruelle, I find that defendant has advanced plaintiff nearly $80,000, and, from the contract of August 12, 1007, I find that defendant has ‘the right in his discretion, to pledge any and all certificates for advances necessary to carry out this agreement, and he shall further have the right to sell a sufficient amount of certificates, representing the city’s portion of payments, under said contract, provided that sufficient funds are not derived from the collection of the property holders’ certificates, for advances made by him.’
“I find from the answer filed by these plaintiffs in No. 80,934, and their petition in No. 88,050, that all the contracts have now been completed, and there remains only to audit accounts and adjust the rights of the parties.
“I find, from the petition No. 88,050, that on August, 12, 1908, petitioners refused (for reasons satisfactory to themselves) to deliver to defendant any further property holders’ certificates other than those which he then held, amounting to about $6,000.
“On August 24, 1908, petitioners filed this suit, enjoining defendant from selling the other certificate he held, viz., a city certificate for $32,075.
“And on December 7, 1908 (in No. 88,050), plaintiffs filed -a claim for damages and to annul the whole contract, because, on August 29, 1908, defendant failed to furnish more money, although, at the time, he had ‘the city certificate for $32,075, * * * and it was said Pratt’s duty to utilize said certificate in making payments and in securing funds for the execution of said contracts.’
“Admitting, for the purpose of the argument, that plaintiffs were justified in retaining and refusing to give defendant the property holders’ certificates, the situation is simply this: Here are plaintiffs, who, in two different suits, admit that there is only a question of accounting between them and this defendant (who has advanced more than double the amount of any claim against him, and whose claim against them exceeds any which they may have against him by morq than the amount of this certificate), who refuse to give defendant the property holders’ certificates, although he had advanced more than double the amount thereof, and who claim damages and seek to annul his contract because of failure to furnish more funds, after being refused new property holders’ certificates, and enjoined him from disposing of the only other certificates he had. In the meanwhile, defendant’s large advances, already made, are drawing no interest under the contract, whilst he, himself, is, presumably, paying interest on the money ($20,000 or more) borrowed by him. 'See petition in 88,050.
“Whatever may be the merits of the claims: advanced by these plaintiffs, in the other suits now pending (Nos. 86,934 and 88,050), it is perfectly certain that their position in this case, at this time, especially in view of their judicial declaration that ‘it was said Pratt’s duty to utilize said certificate,’ is utterly inconsistent and unreasonable, and their injunction will be dissolved at their cost.
“P. S. Except Mr. Demoruelle’s testimony and the contract, I have proceeded h'erein entirely upon plaintiff’s own judicial admissions.
“Rule made absolute.”
The contentions of plaintiff’s counsel are that, in view of the pendency of the suit, by defendant, to enforce specific compliance with the contract of August 12, 1907, and of defendant’s answer and reconventional demand therein, and the pendency of its suit, to annul said contract, the district court should have deferred action on the motion to dissolve the injunction in this case, until the matter shall have been finally decided; the argument being, that:
“The court should not construe one right of Dr. Pratt, under the contract, when such decision might affect the rights of defendant in rule in the position taken by it before other tribunals.”
And an argument to the same effect is addressed to this court, as follows:
“And we now urge before this court, because this court can take judicial cognizance of proceedings pending before it, that Judge Sommerville having, in record No. 17,914 of the docket of this court, determined against the pretensions, of Dr. Pratt, and having ordered an auditing and accounting between the parties, in order to fix their respective rights, and having determin *1055 ed that Dr. Pratt had actively violated the contract of August 12, 1907, this court should not affirm Judge St. Paul’s judgment, in this case, dissolving the injunction asked for by defendant in rule, because, if,' upon hearing case No. 17,914 of the docket of this court, this court should ’be of the opinion that Judge Sommerville’s decision is correct, and affirm his judgment, the sale pf the certificate, resisted in this case, could not take place, pending the auditing and accounting and final settlement ordered by Judge Sommerville. This court is the conservator of the rights and privileges of all citizens. The laws of Louisiana abhor a multiplicity of suits, and, where it is possible, under one proceeding, to settle, determine, and adjust the rights of all parties, courts will favor that proceeding which looks towards a final settlement of all matters that may arise between parties. We, therefore, respectfully urge that this injunction proceeding, and all matters pertaining to the present matter before the court, should be deferred until a final determination of the proceeding in No. 17,914 of the docket of this court, in order that there may not be a conflict arising when all matters are finally brought up for settlement.”
The answer to this argument appears to us to he that, whilst the law abhors a multiplicity of litigation, the same thing is not always true of litigants, who are not readily controlled in that respect. So far as we can see, there was no reason why. the present plaintiff should not have included in its reconventional demand, set up in the suit No. 86,934 of the docket of the district court, all that it is demanding in this suit and in the suit to annul the contract of August 12, 1907 (No. 88,050). But it did not think proper to pursue that course, and the result, so far as this suit is concerned, was that the judge a quo had upon his docket a summary cas’e, demanding- trial, with no plea to the jurisdiction and no suggestion, in the record, upon which, over the objection of one of the .litigants, he could, legally, have based a refusal to proceed with the trial, or could have made an order transferring it to another division of the court.
And the position of this court is much the same. Plaintiff brought this suit after the. suit of defendant had been instituted, and prosecuted it, so far as we know, from the record, up to the time of the filing of the brief in this court, as a proceeding, not, necessarily, dependent, for its propep determination, upon any other litigation. There is in the record No. 17,914 a joint suggestion to the effect that the two suits are between the same parties and involve the interpretation of the same contract, and that “it is desired that both be argued and submitted at the same time,” followed by a motion, which was granted, “that, for the purpose of argument, this cause he consolidated with said suit No. 17,698, to he heard and submitted therewith.” This action, however, merely emphasizes the fact that the cases were thus joined only “for the purpose of argument,” and that, otherwise, they were still regarded, as they have been from the beginning, as independent proceedings, in which the judgments were rendered by different courts, at different times. Under the circumstances thus stated, and, particularly, in view of the fact that the judgment appealed from, in the suit bearing the number (in this court) 17,914, to which counsel for plaintiff refers, is this day annulled, and the cause remanded for further proceedings, upon a question of practice — rendering it uncertain when it will, finally, be decided on the merits — we do not feel authorized to withhold the judgment in the matter now under consideration. The judgment appealed from is, accordingly:
Affirmed.

 Ante, p. 1010.